UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: AMBER SAENZ, No. 25-10458-j13

Debtor.

**<u>MEMORANDUM OPINION</u>**

Debtor Amber Saenz received a chapter 7 discharge in a prior case, discharging her personal liability on a note in favor of First National Bank ("FNB") secured by a deed of trust on Debtor's principal residence (the "Property"). In this subsequent chapter 13 case, Debtor proposes to retain the Property and to treat FNB's claim under 11 U.S.C. § 1325(a)(5)(B)[1] by providing for FNB to retain its lien, and by the continuation of regular monthly payments to FNB until the original maturity date of the loan, long after the end of the chapter 13 plan term. FNB objects to Debtor's proposed treatment of its claim, arguing that, 1) because FNB's ability to collect on the debt after the chapter 7 discharge is limited to its in rem rights in the Property, Debtor's proposed treatment of FNB's claim impermissibly modifies FNB's rights, contrary to § 1322(b)(2); and 2) fails to satisfy § 1325(a)(5)(B)(ii)'s requirement of payment of the full value of FNB's secured claim against the Property over the plan term. For the reasons explained below, the Court concludes that Debtor's proposed chapter 13 plan is unconfirmable. The Court will, therefore, sustain FNB's objection to confirmation, and deny confirmation of Debtor's chapter 13 plan, without prejudice to the filing of an amended plan.

---

[1] All future statutory references herein are to title 11 of the United States Code, unless otherwise specified.

## PROCEDURAL HISTORY

Debtor filed this chapter 13 case on April 18, 2025. Debtor filed a chapter 13 plan ("Plan" – Doc. 8) on April 18, 2025. FNB objected to confirmation of the Plan ("Objection" – Doc. 20) and filed a brief (Doc. 21) in support of its Objection.

Following a preliminary confirmation hearing held July 22, 2025, the Court fixed a deadline for Debtor and FNB to file stipulated facts together with a joint request for the Court to rule on FNB's Objection if the parties wished to so proceed. (Doc. 29). The order also fixed a deadline for FNB to file a motion for summary judgment on the issues raised in its Objection if the parties did not file stipulated facts with a joint request for the Court to rule on the Objection. FNB filed Creditor's First National Bank, Motion for Summary Judgment on its Objection to Confirmation of Debtor's Chapter 13 Plan ("Motion for Summary Judgment" – Doc. 30). Debtor filed a response (Doc. 34), and FNB filed a reply (Doc. 35).

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, made applicable to contested matters in bankruptcy cases by Fed. R. Bankr. P. 9014 and Fed. R. Bankr. P. 7056, the Court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating a request for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Ross v. The Bd. of Regents of the Univ. of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2020) (quoting *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005)).

## FACTS[2]

The following material facts necessary to decide the Motion for Summary Judgment are not in genuine dispute:

1. Debtor Amber Saenz, formerly known as Amber Bell, executed a note payable to FNB on October 21, 2011, in the original principal amount of $91,000 (the "Note").

2. The Note has a fixed annual rate of 5.5% interest and provides for monthly payments over a 360-month term, with a maturity date of October 1, 2041.

3. The Note is secured by a Deed of Trust dated October 21, 2011 (the "Deed of Trust"), recorded in the real property records of Otero County, New Mexico, against the Property located at 1410 Apple Avenue, Tularosa, New Mexico.

4. The Property is Debtor's principal residence.

5. The Note is secured only by the Property.

6. Debtor defaulted under the Note prior to commencement of the Chapter 7 Case (defined below).

7. Upon default, FNB accelerated the indebtedness under the Note.

8. After accelerating the indebtedness under the Note, FNB initiated foreclosure proceedings against the Debtor in the Twelfth Judicial District Court, Case No. D-1215-CV-2023-00932 to foreclose it lien against the Property (the "State Court Action").

---

[2] The parties consented to this Court taking judicial notice of the documents filed in Debtor's prior chapter 7 case, Case No. 24-10910-j7, and in the State Court foreclosure action filed in the Twelfth Judicial District, Case No. D-1215-CV-2023-00932. *See* Motion for Summary Judgment (Doc. 30); Debtor's response (Doc. 34). The Court so takes judicial notice. The Court also takes judicial notice of the docket, documents filed of record in the docket, the claims register, and proofs of claim filed in the claims register of this chapter 13 bankruptcy case. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (the court may take judicial notice of its own files and records); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) ("A bankruptcy court has the inherent authority to take judicial notice of or otherwise consider entries on its own docket.").

9. The State Court referred the State Court Action to its Foreclosure Settlement Program ("FSP").

10. Through the FSP, Debtor and FNB entered into a Settlement Agreement and Release of Claims ("Settlement Agreement") dated July 10, 2024.

11. Under the Settlement Agreement, Debtor agreed to pay arrearages under the Note (amounts past due prior to acceleration of the Note indebtedness), and to continue to make timely, consistent payments due under the Note.

12. In return, FNB agreed under the Settlement Agreement to waive its costs and attorney's fees in bringing the State Court Action and to reinstate the loan evidenced by the Note.

13. Debtor timely made the payments to FNB in the amounts required under the Settlement Agreement.

14. Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 30, 2024, as Case No. 24-10910-j7 (the "Chapter 7 Case").

15. FNB had not reinstated the loan evidenced by the Note prior to commencement of the Chapter 7 Case.

16. Debtor scheduled the debt to FNB in the Chapter 7 Case.[3]

17. Debtor's Statement of Intention filed in the Chapter 7 Case states that Debtor will retain the Property and continue to pay FNB.[4]

18. Debtor scheduled the regular monthly mortgage payment to FNB on Schedule J filed in the Chapter 7 Case.[5]

19. Debtor did not reaffirm the debt to FNB in the Chapter 7 Case.

---

[3] *See* Chapter 7 Case – Doc. 1, p. 19.
[4] *See* Chapter 7 Case – Doc. 4.
[5] *See* Chapter 7 Case – Doc. 1, p. 27.

20. The Bankruptcy Court entered its Order of Discharge in the Chapter 7 Case on December 30, 2024 which granted Debtor a chapter 7 discharge that included a discharge of the indebtedness under the Note.[6]

21. After entry of the discharge in the Chapter 7 Case, Debtor and FNB participated in additional discussions under the FSP in the State Court Action.

22. As part of those discussions, Debtor proposed to continue making voluntary payments to FNB in the amount of the prior monthly payments due under the Note.

23. In response, FNB stated its concern that it could not reinstate the loan because reinstatement would violate the chapter 7 discharge injunction.

24. FNB took no action to reinstate the loan but did continue to accept payments Debtor made under the Note.

25. On February 26, 2025, the settlement facilitator in the FSP filed a report in the State Court Action indicating that the matter failed to settle, and the State Court entered an order removing the State Court Action from the FSP.

26. On March 13, 2025, FNB filed an Amended Complaint for In rem Foreclosure of Deed of Trust ("Amended Complaint") in the State Court Action, seeking to enforce its in rem rights against the Property.

27. Debtor has not filed an answer to the Amended Complaint.[7]

28. Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on April 18, 2025, initiating this chapter 13 case.

---

[6] *See* Chapter 7 Case – Doc. 20.
[7] Debtor filed a motion in the State Court Action seeking to extend the time to answer the complaint. *See* Response to First National Bank['s] Motion for Summary Judgment, p. 7 (Doc. 34).

29. FNB filed a Proof of Claim in this bankruptcy case asserting an rem claim against the Property.[8]

30. FNB's Proof of Claim asserts a secured claim in the amount of $76,557.68.[9]

31. Debtor's Plan proposes to make payments to the Chapter 13 Trustee of $100.00 per month for a period of thirty-six months.

32. In Part 4, ¶4.1 of the Plan, Debtor proposes to make "post-petition mortgage payments" directly to FNB. Although the Plan provides that Debtor's last payment to FNB will be made on April 1, 2025 (which is before the stated payment start date), Debtor's intended treatment of FNB's secured claim is to continue to make monthly payments in the amount stated in the Note and Settlement Agreement until October 1, 2041, the maturity date of the Note.

33. The Plan provides for secured creditors to retain their liens until full payment of their claims secured by collateral as determined under applicable non-bankruptcy law.

34. The Plan contains no provision modifying the effect of the chapter 7 discharge of the indebtedness under the Note.

35. Debtor has continued to make payments to FNB in the amount of the monthly payments due under the Note since the filing of this chapter 13 case.

## DISCUSSION

*The parties' positions*

FNB asserts, for a variety of reasons, that Debtor cannot reinstate the Note for which her personal liability has already been discharged in Debtor's prior chapter 7 case; consequently, FNB contends that Debtor cannot rely on the "cure and maintain" exception in § 1322(b)(5) to

---

[8] *See* Claim No. 4-1. Debtor objected to FNB's proof of claim (Doc. 31), and FNB filed a response (Doc. 38). No hearing has been set on the claims objection.
[9] *See* Claim No. 4-1.

the anti-modification provision in § 1322(b)(2) to make direct, regular monthly payments to FNB on a secured claim on which the last payment is due after completion of all payments under the plan. FNB asserts that the Plan must satisfy the confirmation requirements of § 1325(a)(5)(B). Because Debtor's plan does not propose to pay FNB the full value of its secured in rem claim against the Property over the Plan term as required by § 1325(a)(5)(B), FNB concludes that Debtor's Plan is unconfirmable. FNB also asserts that Debtor has not filed this chapter 13 case or her Plan in good faith.

Debtor acknowledges that § 1322(b)(2) prohibits her Plan from modifying the rights of a holder of a claim secured only by a security interest in real property that is the debtor's principal residence unless the plan complies with §1322(b)(5). But Debtor asserts that her Plan does not modify FNB's rights under Note and Deed of Trust, and, therefore, §1322(b)(5) is inapplicable. Debtor contends the Plan does not modify FNB's rights under Note and Deed of Trust because a) she is current and is not in default under the terms of the Note and Deed of Trust, b) the Plan provides for FNB to retain its lien until the Note is paid in full, c) FNB has been accepting her payments, and d) the Plan requires Debtor to continue to keep the loan current and to pay the Note in accordance with its terms until the loan matures in 2041. Debtor contends that because her proposed treatment of FNB's claim will "leave unaffected" FNB's rights under the Note and Deed of Trust, the Plan satisfies the confirmation requirements of § 1325(a)(5) notwithstanding Debtor's prior chapter 7 discharge and should be confirmed. Debtor points out that the chapter 7 discharge of the debt owing under the Note does not terminate or otherwise affect the Note or Deed of Trust but merely judicially curtails FNB's enforcement options.

Debtor specifically states that she is not seeking confirmation under § 1322(b)(5), as she contends the "cure and maintain" provisions of that section are inapplicable because she is not in

default under the Note and is not seeking to modify the Note or Deed of Trust. Instead, Debtor seeks confirmation of the Plan with respect to the treatment of FNB's claim under § 1325(a)(5). Debtor also argues that the New Mexico Home Loan Protection Act, N.M.S.A. 1978, §§ 58-21A-1 to -14 (2003, as amended effective July 1, 2009), requires FNB to reinstate the Note.

*The anti-modification provision under § 1322(b)(2)*
*and § 1322(b)(5)'s exception thereto*

Section 1322(b)(2) provides that a chapter 13 plan may:

> modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

§ 1322(b)(2) (emphasis added). This section is known as the chapter 13 anti-modification provision. *See Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166, 167-68 (10th Cir. BAP 2005) ("This provision is often referred to as the antimodification clause, and '[p]ut more directly, [it] bars a debtor from modifying the rights of a creditor who has a claim secured only by the debtor's principal residence.'" (quoting *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 609 (3rd Cir. 2000))).

Section 1322(b)(5) is an exception to the anti-modification provision in § 1322(b)(2). *See Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506, 529 (Bankr. S.D. Tex. 2009) ("Section 1322(b)(5) provides an explicit exception to § 1322(b)(2)'s prohibition of mortgage modifications."). It provides:

> notwithstanding paragraph (2) of this subsection, [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

§ 1322(b)(5). Chapter 13 debtors routinely rely on this section to cure pre-petition arrearages on mortgages securing their principal residences while they maintain the regular monthly payments

due under the note. *See Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993) (acknowledging that "§ 1322(b)(5) permits the debtor to cure prepetition defaults on a home mortgage by paying off arrearages over the life of the plan 'notwithstanding' the [anti-modification] exception in § 1322(b)(2)."); *In re Nieves*, 647 B.R. 809, 831 (1st Cir. BAP 2023) ("[T]he provisions of § 1322(b) for proposing a confirmable plan are 'permissive,' and debtors routinely rely on these provisions." (citing 7 Norton Bankr. L. & Prac. 3d § 149:6 (Jan. 2023 Update))); *In re Wimmer*, 512 B.R. 498, 506 (Bankr. S.D.N.Y. 2014) ("Under § 1322(b)(5), the plan may cure arrears on account of a secured claim, such as a home mortgage, through the chapter 13 plan. Aside from curing the default through the plan, the debtor also maintains the contractual monthly payment.").

A debtor need not have a pre-petition arrearage or other default to provide for payment of a creditor's claim through a chapter 13 plan pursuant to § 1322(b)(5); that section applies even when no default exists on the petition date.[10] Debtors who cure "any default" and maintain payments under § 1322(b)(5) do not receive a discharge of that debt upon plan completion. Under the chapter 13 discharge provisions of § 1328(a)(1), a debt "provided for under section 1322(b)(5)" is excepted from the chapter 13 discharge.[11] Thus, a debtor who provides under

---

[10] *See Nieves*, 647 B.R. at 828-29 (recognizing that "courts have ruled that § 1322(b)(5)'s provision for the maintenance of payments on a long-term debt applies even when no default exists at the time of the petition.") (collecting cases); *In re Delauder*, 189 B.R. 639, 644 (Bankr. E.D. Va. 1995) ("[N]otwithstanding the reference in § 1322(b)(5) to the 'curing of any default,' nothing in the statutory language suggests that the provision is restricted to circumstances where there is an existing default . . . ."); *Cloud v. CitiFinancial Inc. (In re Cloud)*, No. 09-60299, 2013 WL 441543, at *2 (Bankr. S.D. Ga. Jan. 31, 2013) ("[T]here is no statutory basis on which to infer an exclusion [from § 1322(b)(5)] of long-term debts that are current as of the date of the petition."); *Jones v. Branch Banking & Trust Co. (In re Jones)*, No. 5:09-CV-419-FL, 2010 WL 11546121, at *3 (E.D.N.C. Feb. 9, 2010) ("There is . . . no principled basis for preventing a debtor from taking advantage of maintaining payments on a long-term debt under § 1322(b)(5) merely because the debtor has not defaulted, because the original agreement can be given effect without resort to a cure.").

[11] Section 1328(a) provides, in relevant part:
> [A]s soon as practicable after completion by the debtor of all payment under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt—
> (1) provided for under section 1322(b)(5)[.].

§ 1322(b)(5) for the "curing of any default" and "maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due" after the final plan payment will not receive the benefit of the chapter 13 discharge with respect to that debt. *See Nieves*, 647 B.R. at 830 ("[W]here a debt is 'provided for' under § 1322(b)(5) in a plan, the debtor is not discharged from that debt at the end of the plan term.") (citing § 1328(a)(1)). In sum, even though a debtor need not modify a claim to rely on § 1322(b)(5), the condition to treatment of a creditor's claim under § 1322(b)(5) is the exception of that debt from the chapter 13 discharge.

Debtor is not asking the Court to confirm the Plan, as it relates to the treatment of FNB's claim, under § 1322(b)(5) and has not responded to FNB's arguments regarding why the Plan cannot satisfy § 1322(b)(5) because of Debtor's prior chapter 7 discharge. The Court therefore will not decide whether the Plan is confirmable under § 1322(b)(5) instead of § 1325(a).

*The confirmation requirements of § 1325 with respect to secured creditors*

Because Debtor is not asking the Court to confirm the Plan as it relates to FNB's claim under § 1322(b)(5), the Plan must comply with the confirmation requirements of §1325(a)(5) with respect to FNB's claim. With respect to allowed secured claims, confirmation of a chapter 13 plan under § 1325(a)(5) requires satisfaction of one of three alternatives:

(A) the holder of such claim has accepted the plan;
(B) (i) the plan provides that—
    (I) the holder of such claim retain the lien securing such claim until the earlier of—
        (aa) the payment of the underlying debt determined under nonbankruptcy law; or
        (bb) discharge under section 1328; and
    (II) If the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

---

§ 1328(a)(1).

        (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; **and**
        (iii) if—
            (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
            (II) the holder of the claim secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; **or**
(C) the debtor surrenders the property securing such claim to such holder[.]

§ 1325(a)(5) (emphasis added).

Alternatives (A) and (C) set forth in § 1325(a)(5) are not applicable here: FNB opposes confirmation, and Debtor does not propose to surrender the Property to FNB. Debtor must therefore satisfy alternative (B) set forth in § 1325(a)(5). *See In re Picht*, 428 B.R. 885, 889 (10th Cir. BAP 2010) ("Third, . . . a plan may be confirmed, even over the objection of the secured creditor, if the plan meets the three-part test of § 1325(a)(5)(B)."). Under alternative (B), "the debtor is permitted to keep the property [securing the creditor's claim] over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral, see § 1325(a)(5)(B)(ii)." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997).

        *Debtor's Plan does not satisfy the requirements of § 1325(a)(5)(B)*

Debtor contends that she satisfies the requirements of that §1325(a)(5)(B) because she is current and is not in default and the Plan provides for FNB to retain its lien until the Note is paid in full. Debtor contends that the Plan does not modify FNB's rights under the Note and Deed of Trust because her prior chapter 7 discharge did not terminate, modify or constitute a breach under the Note and Deed of Trust. FNB counters, among other things, that because its rights following

-11-

Debtor's chapter 7 discharge are limited to its in rem rights in the Property, Debtor must pay the entire amount due under the Note under the Plan term pursuant to § 1325(a)(5)(B), more specifically, § 1325(a)(5)(B)(ii), which requires payment of the allowed amount of FNB's claim over the term of the Plan.[12]

This Court concludes that the Plan does not satisfy the requirements of § 1325(a)(5)(B), regardless of whether Debor's Plan modifies FNB's rights under the Note and Deed of Trust and regardless of whether the Note is current and not in default. Confirmation under § 1325(a)(5)(B) requires satisfaction of each of subsections (i), (ii) and (iii). *See* § 1325(a)(5)(B) (subsections (i), (ii), and (iii) are conjunctive requirements). Debtor's Plan satisfies § 1325(a)(5)(B)(i) because it provides for FNB to retain its lien and for payment of the underlying debt in full.

However, under § 1325(a)(5)(B)(ii), the plan must provide that "the value as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." FNB's claim is fully secured by the Property. But the Plan does not propose to pay FNB's secured claim in full by the end of the 36-month plan term as required by § 1325(a)(5)(B)(ii). Therefore, the Plan does not satisfy the confirmation requirements of § 1325(a)(5)(B) with respect to FNB's claim. *See In re Materne*, 640 B.R. 781, 792 (Bankr. D. Mass. 2022) ("Section 1325(a)(5)(B)(ii) provides that the value of any property to

---

[12] Debtor has filed an objection to FNB's claim, which disputes that she is in default under the Note, and objects to any pre-petition attorneys' fees included in FNB's claim based on the Settlement Agreement. *See* Doc. 31. FNB has filed a response. *See* Doc. 38. Until the objection has been ruled upon, FNB's claim has not been allowed. Because Debtor's objection to FNB's claim does not object to the fully-secured nature of FNB's claim, the Court can rule on the objection to confirmation of Debtor's Plan without first resolving the objection to FNB's claim.

-12-

be distributed under the plan on account of the secured claim be not less than the allowed amount of the claim.").[13]

*The New Mexico Home Loan Protection Act is inapplicable*

Debtor also contends that under the New Mexico Home Loan Protection Act, FNB is required to reinstate the loan. Section 58-21A-6 provides:

> If a creditor . . . asserts that grounds for acceleration exist and requires payment in full of all sums secured by the home loan, the borrower . . . may, at any time prior to the time title is transferred by means of foreclosure, by judicial proceeding and sale or otherwise, cure the default and re instate the home loan. Cure of the default shall reinstate the borrower to the same position as if the default had not occurred and shall nullify, as of the date of the cure, an acceleration of any obligation under the home loan arising from the default.

N.M.S.A. 1978, § 58-21A-6(B). Debtor cannot rely on New Mexico's Home Loan Protection Act to reinstate the loan because that statutory scheme contemplates that the loan be reinstated in accordance with its original terms. Since the chapter 7 discharge eliminated Debtor's personal liability and changed the Debtor's obligation from a recourse obligation into a non-recourse obligation,[14] the loan cannot be reinstated in accordance with its original terms. Thus, the Home Loan Protection Act, N.M.S.A. 1978, §§ 58-21A-1-1 to -14, is inapplicable.

## **CONCLUSION**

Based on the foregoing, the Court will grant FNB's motion for summary judgment, in part, and sustain FNB's objection to confirmation of Debtor's Plan because it does not comply with the confirmation requirements of § 1325(a)(5)(B)(ii) to provide for payment of FNB's secured claim

---

[13] *Cf. Picht*, 428 B.R. at 894 (concluding that debtor's plan did not satisfy the requirements of § 1325(a)(5)(B)(i)(I)(aa) because it required the secured creditor "to release its lien after payments totaling less than the full amount of its in rem judgment").

[14] *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A chapter 7] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); *Picht*, 428 B.R. at 891 (Debtors' "personal liability for the debt was discharged in their Chapter 7 case, but, as evidenced by the post-discharge *in-rem* judgment, the underlying debt itself had not been extinguished.").

-13-

Case 25-10458-j13   Doc 43   Filed 02/09/26   Entered 02/09/26 16:35:34 Page 13 of 14

in full over the plan term. It is not enough that Debtor proposes for FNB to retain its lien and maintain the payments under the terms of the original Note until the Note is paid in full.[15] Because the Court concludes that Debtor's Plan does not satisfy § 1325(a)(5)(B), the Court does not need to address on summary judgment whether Debtor filed this chapter 13 bankruptcy case and Plan in good faith. Denial of confirmation will be without prejudice to Debtor seeking confirmation of an amended plan. The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 9, 2026

COPY TO:

R. Trey Arvizu, III
Attorney for Debtor
R. Trey Arvizu III - Attorney
715 E Idaho Ave, Ste 3f
Las Cruces, NM 88001

Rebekah Anne Courvoisier
Courvoisier Law, LLC
P.O. Box 5
Santa Fe, NM 87504

Tiffany M. Cornejo
Chapter 13 Trustee
625 Silver Ave. SW, Suite 350
Albuquerque, NM 87102

---

[15] It appears Debtor is also seeking to deaccelerate the indebtedness under the Note. Prepetition, FNB accelerated the debt and has not deaccelerated it.